## IN THE COURT OF APPEALS OF IOWA

No. 17-2102
Filed January 9, 2019

IN RE THE MARRIAGE OF TERRY WAYNE BAKER
AND MARY ELIZABETH BAKER

Upon the Petition of
**TERRY WAYNE BAKER,**
        Petitioner-Appellant,

And Concerning
**MARY ELIZABETH BAKER,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Wapello County, Randy S. DeGeest,

Judge.

        Terry Baker appeals from the modification of the spousal support provisions

of the decree dissolving his marriage to Mary Baker.  **AFFIRMED.**

        R.E. Breckenridge of Breckenridge Law, PC, Ottumwa, for appellant.

        Michael O. Carpenter of Gaumer, Emanuel, Carpenter & Goldsmith, PC,

Ottumwa, for appellee.

        Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**POTTERFIELD, Presiding Judge.**

Terry Baker appeals from the modification of the spousal support provisions of the decree dissolving his marriage to Mary Baker. Because we find the modification of spousal support is equitable and based upon a substantial change of circumstances, we affirm.

**I. Background Facts and Proceedings.**

The parties were married in 1972 when Terry was twenty years old and Mary was eighteen. Mary did not finish high school, but stayed home and raised the parties' children while Terry worked and supported the family. The parties separated in January 2007. The district court entered a decree of separate maintenance in December 2009, ordering Terry to pay Mary $150 per week in spousal support until further order of the court.

A decree was entered on January 28, 2015, dissolving Terry and Mary's marriage. Terry testified during the dissolution trial that he would like to retire when he turned age sixty-five. At the time of dissolution, Terry worked full time for Deere & Company earning $78,565.24 per year. Terry anticipated his pension from Deere & Company would be $400 or $500 per month. In late 2014, Terry received at least $6000 from his father's estate. Terry reported no health issues at that time and acknowledged he had a comfortable income that more than covered his monthly expenses. After paying his obligations to Mary, Terry's monthly net income would be $5560.47.

At the time of dissolution, Mary was employed part time at J.C. Penney earning $7083.89 per year. Mary also received $869.63 in alimony each month,

plus $390 per month from Terry's Maytag pension plan, and $89 per month in food stamps. Mary's monthly net income was $1863.97.

The court considered the length of the parties' marriage, their earning capacities and sources of income, their ages and health, and financial obligations. The court determined the $150 per week ordered in 2009 in the decree of separate maintenance was traditional alimony. In light of Mary's probable inability to become self-supporting, her age and unlikelihood of increasing her education or job training, her health issues, and her imminent loss of health insurance, the court ordered Terry to pay spousal support to Mary in the amount of $300 per week until Mary reaches age sixty-five, either party dies, or until Mary remarries, whichever happens first. Part of this increase from the separate maintenance order was attributed to Mary's loss of health insurance—the court estimated Mary's monthly healthcare expenses would be $607.88 based on the cost of her coverage under Terry's Deere & Company health insurance plan. After Mary reaches age sixty-five, spousal support would continue at the rate of $50 per week.

Terry has a history of not paying spousal support. Terry was cited for contempt in 2009 related to the decree for separate maintenance. From the entry of the dissolution decree in January 2015 to October 2015, Terry paid only $200 per week rather than $300. Mary filed a contempt action in July 2015 to address Terry's nonpayment. A withholding order was entered in September 2015, but the order mistakenly set the withholding at $300 per month, rather than per week. After the withholding order, Terry's weekly payments rose to $269 per week—$69 per week from the withholding order. Terry made one-time payments in October 2015 and March 2016.

In April 2016, Terry agreed to the entry of an order finding him in contempt, sentencing him to seven days in jail, but with the opportunity to purge the contempt by paying the accumulated arrearages, paying the full amount of weekly payments for sixty days, and paying Mary's attorneys fees in the amount of $1500. Terry failed to purge contempt, and the district court issued a bench warrant in August 2016. Terry ultimately paid the $1500 attorney fee and made a lump payment of $2513 for the arrearage amount specified in the April 2016 contempt order, but Terry stopped making any weekly spousal support payments in March 2016.

Terry retired in April 2016. On June 15, 2016, Terry filed a petition to modify the decree seeking to reduce or eliminate his obligation to pay spousal support. Terry contended his retirement constituted a substantial change in circumstances warranting a modification in the support order, pursuant to Iowa Code section 598.21C (2017). Mary argued Terry's retirement was not a substantial change in circumstances because it was contemplated by the dissolution court in awarding spousal support. Mary also urged that modification was not appropriate in light of Terry's inheritance from his father's estate and because of Terry's contempt of the original order. At the time of trial on modification, Terry was sixty-five years old, and Mary was sixty-three.

The district court found that Terry's retirement was a change in employment and income. The court concluded Terry's significant decrease in income constituted a substantial change in circumstances. The court also noted Mary now received medical insurance at no cost through Medicaid and was working full time to support herself. Because the court concluded complete termination of spousal support would be inequitable to Mary, the court reduced the amount of spousal

support from $300 per week to $215 per month. The court made this modification retroactive to October 1, 2016, which was three months after notice of the petition to modify was served on Mary. The court ordered the $215 monthly obligation continues until either party dies or Mary remarries.

Based on the retroactive modification, the court calculated Terry still owed Mary $6610 in unpaid spousal support. The court ordered Terry to pay, in addition to the newly required $215 per month, monthly payments of $185 on the arrearage until the arrearage is paid in full.

Terry appeals.

## II. Standard of Review.

We review an order modifying a decree for dissolution of marriage de novo. *In re Marriage of Sisson*, 843 N.W.2d 866, 870 (Iowa 2014). We will disturb the trial court's ruling only when there has been a failure to do equity. *Id.*

## III. Discussion.

Terry contends the substantial change in circumstances no longer requires the payment of spousal support nor justifies its continuation beyond Mary reaching age sixty-five. Mary contends Terry's voluntary retirement was contemplated by the dissolution court when it ordered spousal support, there has not been a change in circumstances not contemplated by the dissolution court, and that the relevant factors weigh against modifying spousal support.[1] She requests we affirm the district court, order Terry to pay more spousal support, or reverse and remand for new proceedings in the district court.

---

[1] Mary did not cross-appeal.

The court may modify spousal support orders when there is a substantial change in circumstances. Iowa Code § 598.21C. In determining whether there is a substantial change in circumstances, the court considers:

> (a) Changes in the employment, earning capacity, income, or resources of a party.
> (b) Receipt by a party of an inheritance, pension, or other gift.
> (c) Changes in the medical expenses of a party.
> . . . .
> (j) Contempt by a party of existing orders of court.
> . . . .
> (*l*) Other factors the court determines to be relevant in an individual case.

*Id.* § 598.21C(1).

We agree Terry's change in income and employment due to his voluntary retirement does not constitute a substantial change in circumstances because his retirement was expected and considered by the dissolution court when it set the amount of spousal support. *See In re Marriage of Gust*, 858 N.W.2d 402, 420 (Iowa 2015) (Wiggins, J., dissenting) ("Our case law is clear and well settled—you can only modify a decree if there is a substantial change in circumstances not contemplated by the court at the time of the entry of the decree.") (citing *In re Marriage of Sisson*, 843 N.W.2d 870–71 (Iowa 2014)).

However, the amount of spousal support was based in part on Mary's anticipated healthcare expenses, and she now receives Medicaid at no cost to herself. Additionally, Mary has improved her financial situation by working full time. Mary also drew early social security benefits, although she will incur a penalty for doing so. Mary's increased income and changes in medical expenses are substantial changes in circumstances.

The modified amount of spousal support—$215 per month—is comparable to what the dissolution court ordered Terry to pay—$50 per week—after Mary reached age sixty-five. Terry expressed his intent to retire at the time of dissolution, and the dissolution court contemplated Terry's reduced income when it ordered him to continue paying spousal support even after the parties' retirements. On this record, the court did not fail to do equity in ordering Terry to pay spousal support in the amount of $215 per month.

**IV. Appellate Attorney Fees.**

Mary asks us to award her appellate attorney fees. An award of such fees is discretionary. *See Spiker v. Spiker*, 708 N.W.2d 347, 360 (Iowa 2006) (considering the award of appellate attorney fees in a modification action). "Factors to be considered in determining whether to award attorney fees include: 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). After considering the appropriate factors, we award Mary $2000 in appellate attorney fees.

Costs of this appeal are taxed to Terry.

**AFFIRMED.**